[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an action for dissolution of the marriage of the parties. The parties appeared for trial and offered evidence and testimony concerning the issues of child custody, child support, alimony, the division of marital assets and the causes for the breakdown of the marriage. CT Page 8467
In addition to the evidence and testimony, the court has taken into consideration the provisions of Sections 46b-56, 46b-56a, 466-81, 46b-82
and 46b-84, Connecticut General Statutes in arriving at the following findings of facts and orders in the above-captioned matter.
The parties were married at Brookfield, Connecticut on November 14, 1987 and have resided in this state for at least twelve months before the commencement of this action.
The marriage of the parties has broken down irretrievably and there is no possibility of reconciliation.
There are three minor children issue of this marriage, namely: Shane Stanley, born February 9, 1991, Lynda Stanley, born March 18, 1994 and Mark Stanley, born August 18, 1998.
On May 14, 2001, the parties stipulated and agreed to joint legal custody of the said minor children and to shared physical custody as per their written stipulated agreement. On that date, the court accepted the parties agreement and made their agreement the orders of this court, subject to any future modification of these orders by this court. The orders provide that each party has overnight custody of the children for seven out of every fourteen nights. The result is that each parent has an equal responsibility for the routine expenses incurred on behalf of the children.
The plaintiff is 41 years old. She has a 10th grade education. During the marriage the plaintiff was employed on a part time basis as a licensed hairdresser. That employment began in 1996. Her average annual income was between $5,000.00 and $6,000.00. During the marriage she also tried her hand at a Rexall products distributorship and candle sales, but neither proved financially worth the time and effort.
At the time of trial, the plaintiff was employed on a part-time basis as a haircutter. Based on the evidence, the court finds that her average gross weekly income is $100.00 per week, which nets her approximately $93.00.
She testified that her health is not good. Specifically, she testified that she suffers from anxiety attacks and extreme nervousness. In 1999 she was treated by a psychiatrist and was on medication to address those complaints. She stopped treating because she could not afford the cost and had no medical coverage.
She testified that the defendant had subjected her to numerous incidents of domestic violence and physical abuse on various dates during CT Page 8468 the marriage. She testified that she tolerated that abuse because she feared taking any steps which might cause the defendant to stop "keeping a roof over our heads."
The defendant denied any systematic abuse and explained that some of the incidents testified about by the plaintiff had occurred, but they were accidental or exaggerated. He testified that the plaintiff had a "chemical imbalance" in her brain and that she wouldn't go for therapy and routinely failed or refused to take her medications. That mental condition prevented the plaintiff from doing things with the defendant and prevented her from properly maintaining the family residence and was the cause of the friction between the parties.
The defendant moved out of the marital residence in mid-1999. He voluntarily contributed $200.00 to the household expenses and continued to pay that amount after it became a pendente lite order of the court.
The defendant is 41 years old and in generally good heath. He is a partner of his father in a construction business known as Roadmaster Paving Sealing, L.L.C. The exact extent of his partnership interest was the subject of conflicting testimony — the least being a 20% interest.
The parties offered considerable evidence and testimony concerning the marital finances — especially the income of the defendant. During the marriage the defendant was employed by Roadmaster, a business founded by the defendant's father, William Stanley, in 1957. The defendant worked for the company as a young man and eventually was made the only partner with his father.
As noted, there was conflicting testimony as to exactly what the percentage of each partner's interest in the business. The defendant's father testified that the defendant's partnership interest was 20%. It is noted that in the portion of their written partnership agreement, captioned "Partnership Percentage", the defendant's percentage is listed as 40% and then amended in handwriting to "20%" (Defendant's Ex. A).
On the partnership's income tax form 1065 Schedule K-1 (Plaintiff's Ex. 2) William Stanley's interest is 17.198% and Mark Stanley's interest is 82.802%. The court finds that to be the more credible evidence as to the defendant's partnership interest in the business.
William Stanley also testified that throughout the marriage of the parties, the defendant regularly drew money from the business almost at will. That was acceptable to the father "so long as we had it." He further testified that the health of his wife, the defendant's mother, CT Page 8469 had deteriorated drastically and, as a consequence, her income, estimated to be $30,000 to $50,000 was no longer coming in and the defendant would no longer be able to take generous draws from Roadmaster as he had done in the past.
Without including the draws he enjoyed from Roadmaster, the defendant offered evidence that his income for 1999 was approximately $38,325.00 (Deft. Ex. E) and approximately $56,964.00 for 2000 (Plaintiff's Ex. 1). His income for 1996, 1997 and 1998 was reported to be approximately $38,000.00-$41,000.00 — again, without including his draws from Roadmaster (Deft. Exhibits B, C and D).
In addition to the defendant's salary or draw, Roadmaster's bank account was regularly the source of payments for many martial expenses including a condominium owned by the defendant, the defendant's automobile payments, the mortgage on the marital residence, certain utility bills and several credit cards of the plaintiff and defendant. The plaintiff offered evidence that the total amount paid through Roadmaster's checking account for debts of the parties was approximately $72,416.58 in the year 2000 alone (Plaintiff's Ex. 3).
It is obvious from the evidence and testimony that the parties' expenses paid by Roadmaster exceeded by far the income from Roadmaster reported by the defendant (Plaintiff's Ex. 3). If the defendant's father is to be believed, those days are over and there will be much less money available to the defendant from now on.
The court finds the defendant's gross annual income to be no less than $83,000.00 — approximately $61,000.00 of which being salary and the remainder being draws, bonuses, advances, gifts and perquisites from his company.
The primary asset of the parties is the marital residence located at 27 Silvermine Road, Brookfield, Connecticut which the parties both valued at $300,000.00 with equity in the approximate amount of $95,000.00.
Having considered the evidence and testimony, the court enters the following orders:
The parties are to enjoy joint legal custody of their three minor children. They are to continue to maintain the shared living arrangements with the children as stipulated and previously ordered by this court except as to any voluntary changes which they can both agree to.
The defendant is ordered to pay to the plaintiff unallocated periodic alimony and child support in the amount of $450.00 per week. Unless and CT Page 8470 until modified by further orders of this court, that obligation shall continue for 10 years from the date of this judgment unless terminated earlier by the first of the following events: the death of either party; the remarriage of the plaintiff; or cohabitation by the plaintiff, as that term is defined by statute. Upon termination of unallocated periodic alimony, the defendant shall continue to pay to the plaintiff child support in an amount appropriate to the applicable guidelines.
The defendant shall maintain health insurance for the benefit of the minor children through his employment. If such insurance is unavailable to the defendant, he shall obtain comparable insurance through the Husky program. Any uninsured or unreimbursed medical, dental or other necessary expenses incurred for the minor children shall be shared by both parties in the proportion determined by the then-applicable support guidelines. The defendant shall cooperate with the plaintiff's efforts to obtain medical insurance through his employment under COBRA. The cost of such insurance for the plaintiff shall be shared by the parties.
The parties shall share equally the personal effects and household contents and furnishings in the martial residence. Any dispute as to this order shall be mediated by the Family Relations Office.
The parties each shall be responsible for the debts listed on their respective financial affidavits and shall indemnify and hold harmless the other from all claims arising from such debts — with the exception of the Beneficial Finance debt listed on the plaintiff's affidavit. That debt shall be apportioned equally between the parties.
The defendant shall obtain life insurance on his life in the maximum amount available to him for a premium of $500.00 per year and shall name the minor children as irrevocable beneficiaries of such life insurance.
The defendant shall transfer to the plaintiff his IRA account with PFC financial which is listed on his financial affidavit in the amount of $3002.00. That transfer shall be made within 30 days of this order.
The defendant shall pay off the debt on the 1995 Lincoln automobile and shall transfer his title to that vehicle to the plaintiff within 60 days of this order.
The defendant shall have the right to purchase the plaintiff's interest in and to the marital residence located at 26 Silvermine Road, Brookfield for the sum of $65,000.00. The defendant shall exercise that right within 90 days from the date of this decree, unless the parties agree to extend that deadline. Should the defendant decline to purchase the residence, it shall be listed for sale and the parties are to cooperate in the efforts CT Page 8471 to sell it. The net proceeds shall be divided equally between the parties.
The defendant shall retain all of his right, title and interest in and to the condominium located at 5 Nabby Road, Danbury. He shall remain solely responsible for any debts related to that property.
The defendant shall be entitled to claim the parties three minor children as tax exemptions unless and until the plaintiff's annual gross income exceeds $20,000.00 when she shall become entitled to claim one of the three children.
The defendant is to provide the plaintiff, annually, with copies of his state and federal income tax returns and of the U.S. return of partnership income of Roadmaster.
Having found that the marriage of the parties has broken down irretrievably, it is hereby decreed that the marriage of the parties is dissolved and they are single a unmarried.
By the Court,
Joseph W. Doherty, Judge